# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

THE TRUSTEES OF THE PLUMBERS AND : 
PIPEFITTERS NATIONAL PENSION FUND, :
103 Oronoco Street :
Alexandria, Virginia, 22314, :
 :
       Plaintiffs, :
 :
    v. :
 :    Civil Action No. _____
P.A.C. HEATING INC. :
   *d/b/a* PAC PLUMBING & :
   HEATING, INC., :
545 Port Richmond Avenue :
Staten Island, New York, 10302 :
 :
   Serve: :
   Paul A. Campione, Jr., President :
   545 Port Richmond Avenue :
   Staten Island, New York, 10302 :
 :
       Defendant. :
 :

## COMPLAINT

(TO COLLECT WITHDRAWAL LIABILITY
DUE PLAINTIFF FUND)

## PARTIES

1. Plaintiffs Trustees of the Plumbers and Pipefitters National Pension Fund (hereinafter the "Fund") are the trustees of a multiemployer employee defined benefit pension plan as those terms are defined in 29 U.S.C. §§ 1002(2), (3) and (37), and 1301(a)(3). The Fund is established and maintained pursuant to a Restated Agreement and Declaration of Trust and to collective bargaining agreements between affiliated local unions of the United Association of

Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("United Association") and employers including but not limited to the Collective Bargaining Agreement between United Association Local 1 and P.A.C. Heating, Inc. d/b/a PAC Plumbing and Heating, Inc.  The Fund is administered at 103 Oronoco Street, Alexandria, Virginia 22314.

2.     Defendant P.A.C. Heating, Inc. d/b/a PAC Plumbing and Heating, Inc. (hereinafter "PAC" or the "Company") is a corporation existing under New York law with an office located in Staten Island, New York.  PAC transacts or transacted business in the State of New York as a contractor or subcontractor in the plumbing and pipefitting industry and at all times herein was an employer in an industry affecting commerce as those words are defined in 29 U.S.C. §§ 152(2); and 1002(5), (9), (11), (12) and (14).

## JURISDICTION

3.     This Court has jurisdiction over this action under 29 U.S.C. §§ 1132, 1145 and 1451 because this is an action to collect withdrawal liability payments due to an employee benefit plan under the terms of the plan and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The Court also has jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

## VENUE

4.     Venue is proper in this district pursuant to 29 U.S.C. §§ 1132(e)(2) and 1451(d) because the Fund is administered in this district.

## FACTS

5.     Beginning in or around 1999, PAC was obligated to contribute, and did contribute, to the Fund on behalf of its employees pursuant to successive collective bargaining agreements

between Local Union No. 1 of the United Association ("Local 1") and the Association of Contracting Plumbers of the City of New York, Inc. (which successive agreements are hereinafter referred to collectively as the "Collective Bargaining Agreement"). The Collective Bargaining Agreement established the terms and conditions of employment for PAC's employees who are or were engaged in commercial and residential plumbing, pipe fitting, and refrigeration work.

6. Pursuant to the Collective Bargaining Agreement, PAC agreed to pay to the Fund certain sums of money for each hour worked by its employees that were covered by the Collective Bargaining Agreement. PAC also agreed, pursuant to the Collective Bargaining Agreement, to be bound by the Fund's Restated Agreement and Declaration of Trust (hereinafter, "Trust Agreement") and the Full Text of the Plan Rules (hereinafter, the "Plan").

7. PAC's obligation to contribute to the Fund terminated September 30, 2016.

8. In or around April 2019, the Fund became aware that PAC was performing work in the jurisdiction of Local 1 of the type for which it had previously been obligated to contribute to the Fund under the Collective Bargaining Agreement. Such work occurred within five years after the date on which the Company's obligation to contribute to the Fund ceased, and PAC has not signed a new Collective Bargaining Agreement with Local 1 or otherwise renewed its obligation to contribute to the Fund. Therefore, the Company has experienced a complete withdrawal from the Fund within the meaning of 29 U.S.C. § 1383(b).

9. On April 19, 2019 and again on April 24, 2019, the Fund sent a letter to PAC's President, Paul A. Campione, Jr., notifying him of the Fund's determination that PAC had experienced a withdrawal and, as a result, was subject to withdrawal liability in the lump sum amount of $263,676.00. The letter provided an amortization schedule comprised of twenty-three (23) monthly payments of $11,539.00 each and one final payment of $9,189.00. It stated the first

payment was due on June 1, 2019 and the remaining payments were due on the first day of each subsequent month.

10. The Fund's April 24, 2019 letter was received by PAC on April 26, 2019 according to tracking information from the United States Postal Service.

11. PAC failed to make payment of its June 1, 2019 installment.

12. On June 6, 2019, the Fund sent PAC a notice of late payment regarding the June installment and demanding immediate payment of same, which PAC received June 11, 2019.

13. PAC did not request review of the Fund's assessment within ninety days after receiving the assessment letter as required by 29 U.S.C. § 1399(b)(2)(A) or at any other time, and more than 61 days has passed since the expiration of the deadline for PAC to request review as set forth in 29 U.S.C. § 1399(b)(2)(A). Accordingly, PAC has waived the right to arbitrate under 29 U.S.C. § 1401, and the Fund is authorized pursuant to 29 C.F.R. § 4219.31 to require immediate payment of all of PAC's outstanding withdrawal liability plus interest.

14. On August 12, 2019, the Fund, by and through counsel, sent PAC a notice of late payment regarding its past-due installments for June, July, and August 2019 and demanding immediate payment of same, which PAC received August 15, 2019. The letter advised further that if PAC failed to cure its delinquency by September 24, 2019, PAC's entire outstanding withdrawal liability would become immediately due and owing.

15. PAC made no payment in response to the August 15, 2019 demand letter.

16. On September 27, 2019, the Fund, by and through counsel, advised PAC's counsel that the Company had ten (10) days to make payment of its past due installments for June through September 2019.

17. PAC failed to remit any amounts owing to the Fund.

## COUNT I

### (To Collect Unpaid Withdrawal Liability
### Owed to the Fund)

18. Plaintiffs hereby restate and incorporate by reference the foregoing Paragraphs 1 through 17 as if fully set forth in this Count I.

19. PAC failed to make its June 1, 2019 installment or any payment thereafter.

20. More than sixty days have passed from the date the Fund notified PAC that its June 1 payment was past due. In addition, more than sixty-one days have passed since the deadline for Defendant to request review. Defendant is, therefore, in default as that term is defined in 29 U.S.C. § 1399(c)(5) and 29 C.F.R. § 4219.31(b).

21. ERISA provides in 29 U.S.C. § 1451(b) that any failure of an employer to make any withdrawal liability payment within the time prescribed by law shall be treated in the same manner as a delinquent contribution under 29 U.S.C. § 1145, and provides for a right of action to collect same.

22. 29 U.S.C. § 1132 provides for civil enforcement of ERISA's provisions, including 29 U.S.C. § 1145. Specifically, 29 U.S.C. § 1132(g)(2) provides that, in any action to enforce 29 U.S.C. § 1145 in which a judgment in favor of a plan is awarded, the court shall award the plan the unpaid contributions; interest on same; an amount equal to the greater of (a) the interest on the unpaid contributions or (b) liquidated damages provided for under the plan in an amount not in excess of 20 percent of the unpaid contributions; reasonable attorneys' fees and costs of the action; and such other legal and equitable relief as the court deems appropriate.

23. In addition, 29 U.S.C. § 1132(g)(2) provides that interest on unpaid contributions shall be determined using the rate provided in the plan, or, if none, the rate prescribed under 26

U.S.C. § 6621.  Section 12.05(c)(i) of the Plan provides that interest shall begin to accrue from the date the payment was due until the date paid, and Section 12.05(d)(ii) of the Plan provides that:

> unpaid withdrawal liability payments shall be charged interest from the date the payment was due to the date it is paid at an annual rate equal to the prime rate charged by JP Morgan Chase & Co. [] on the first day of the calendar quarter preceding the due date of the payment.  For each succeeding 12-month period that any amount in default remains unpaid, interest shall be charged on the unpaid balance (including accrued interest) at the prime rate in effect on the anniversary date of the date as of which the initial interest rate was determined.

24. The first day of the calendar quarter preceding June 1, 2019 was April 1, 2019.  The prime rate charged by JP Morgan Chase & Co. on that date, as shown on http://www.jpmorganchase.com/corporate/About-JPMC/historical-prime-rate, was 5.50%.

25. Section 12.05(e) of the Full Text of the Plan provides that,

> [i]n any suit by the Trustees to collect withdrawal liability, … if judgment is awarded in favor of the Plan, the Employer shall pay to the Plan, in addition to the unpaid liability and interest thereon as determined [as set forth in paragraph 24 above], liquidated damages equal to the greater of: (i) the amount of interest charged on the unpaid balance, or (ii) 20 percent of the unpaid amount awarded.

26. Defendant failed to make the installment due on June 1, 2019 under the payment schedule set forth in the Fund's April 19, 2019 letter, and Defendant did not timely request review.  Defendant is, therefore, in default and obligated to the Fund for its entire outstanding withdrawal liability assessment of $263,676.00.

27. Pursuant to 29 U.S.C. § 1132(g)(2) and Plan Section 12.05(d)(ii), Defendant is also obligated to the Fund for interest on the unpaid withdrawal liability from the date due of the June 1, 2019 installment to the date of payment at the initial interest rate of 5.50%.

28. Pursuant to 29 U.S.C. § 1132(g)(2) and Plan Section 12.05(e), Defendant is also obligated to the Fund in the amount of $52,735.20 in liquidated damages, which is 20% of the total outstanding withdrawal liability of $263,676.00 owed by Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment on Count I against Defendant as follows:

A.    In the principal amount of $263,676.00, representing the total outstanding withdrawal liability due from Defendant;

B.    In the amount of $52,735.20 for liquidated damages assessed on the principal amount set forth in Paragraph A;

C.    For interest on the principal amount set forth in paragraph A assessed at a rate of 5.50% per annum from June 1, 2019, when the first payment due was not made, until the date of judgment;

D.    For post-judgment interest pursuant to 28 U.S.C. § 1961;

F.    For costs and reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

G.    For such further legal and equitable relief as the Court may deem appropriate.

Respectfully submitted,

Date:  October 29, 2019        By: ____/s/_____
John R. Harney (Va. Bar No. 41520)
**O'DONOGHUE & O'DONOGHUE LLP**
5301 Wisconsin Avenue NW
Suite #800
Washington, D.C.  20015
(202) 362-0041 telephone
(202) 362-2640 facsimile
jharney@odonoghuelaw.com

By:   /s/ _____
Jacob N. Szewczyk (Va. Bar No. 89617)
**O'DONOGHUE & O'DONOGHUE LLP**
5301 Wisconsin Avenue NW
Suite #800
Washington, D.C. 20015
(202) 362-0041: Telephone
(202) 362-2640: Facsimile
jszewczyk@odonoghuelaw.com

*Attorneys for Plaintiffs*

334773_1